367 F.3d 263
 Hobert L. BUZZARD, Plaintiff-Appellant,
v.
Michael H. HOLLAND; Marty D. Hudson; Joseph P. Brennan; B.V. Hyler, as Trustees of the United Mine Workers of America 1974 Pension Plan and Trust; United Mine Workers Of America 1974 Benefit Plan And Trust, Defendants-Appellees.
 No. 03-1406.
 United States Court of Appeals, Fourth Circuit.
 Argued January 20, 2004.
 Decided April 26, 2004.
 Corrected Opinion Filed May 17, 2004.
 
 COPYRIGHT MATERIAL OMITTED ARGUED: Robert B. Wilson, Charleston, West Virginia, for Appellant. Jerry Mims, Office of General, UMWA Health & Retirement Funds, Washington, D.C., for Appellees. ON BRIEF: Glenda S. Finch, Deputy General, Office of the General, UMWA Health & Retirement Funds, Washington, D.C., for Appellees.
 Before NIEMEYER, KING, and DUNCAN, Circuit Judges.
 Reversed and remanded by published opinion. Judge DUNCAN wrote the opinion, in which Judge KING joined. Judge NIEMEYER wrote a dissenting opinion.
 DUNCAN, Circuit Judge:
 
 
 1
 Hobert L. Buzzard appeals the district court's entry of summary judgment in favor of the Trustees of the United Mine Workers of America 1974 Pension Plan and Trust ("Trustees"). The district court found no abuse of discretion in the Trustees' decision that Buzzard was not entitled to a disability pension under the 1974 Pension Plan. We find that the denial of disability pension benefits in this case is not supported by substantial evidence. We accordingly reverse and remand with instructions that judgment be entered in favor of Buzzard.
 
 I.
 
 2
 A. Mine Accident and Subsequent Medical Treatment
 
 
 3
 Buzzard was employed as a laborer in the West Virginia coal mines from October 20, 1970 to June 3, 1987. On June 3, 1987, Buzzard hit his head on an airlock while driving a scoop in the mines. Buzzard was immediately hospitalized and treated for injuries to his head, neck, jaws, shoulders, and back. A doctor examining Buzzard on the day of the accident diagnosed his condition as blunt chest trauma and acute cervical strain.
 
 
 4
 On August 3, 1987, Dr. John Schmidt, a neurologist, examined Buzzard for complaints of headaches, neck pain, dizziness, forgetfulness, and irritability. He diagnosed cervical strain and post-concussion syndrome. Dr. Schmidt subsequently noted in a letter to the West Virginia Workers' Compensation Fund that although his physical examination of Buzzard was "within normal limits," Buzzard appeared "somewhat depressed." Dr. Schmidt recommended a course of physical therapy and Elavil, an anti-depressant medication.
 
 
 5
 For several months, Dr. Schmidt continued to see Buzzard in connection with his mine injury, and noted that Buzzard's condition was steadily improving. In October 1987, Dr. Schmidt wrote to the Workers' Compensation Fund that Buzzard was improving and "wants to try to return to work." Dr. Schmidt estimated that Buzzard "could return to his former occupation as of October 19, 1987."[1] It was not possible, however, for Buzzard to return to his former occupation because his job had been terminated when the mine closed in September 1987.
 
 
 6
 Dr. Karen Pettry, a doctor of osteopathy, saw Buzzard periodically from August 1989 to April 1995. A treatment note dated August 8, 1989 indicates that Dr. Pettry prescribed Halcion to treat Buzzard's insomnia and Xanax to treat his anxiety.[2] On September 4, 1989, she observed that Buzzard "does well on meds[,] bad off. Xanax .5 doesn't help. Much stress in family." Dr. Pettry renewed his prescriptions for Xanax and Halcion. Her notes from October 25, 1990 reveal that Buzzard continued to suffer from anxiety, although he appeared to be "less depressed." On June 27, 1991, Dr. Pettry wrote that Buzzard was experiencing chronic fatigue, paranoid delusions, which she believed were related to anxiety and depression, and that Buzzard had experienced violent suicidal thoughts. At this time, she added Elavil to Buzzard's treatment regimen. Buzzard continued this course of treatment while he remained under Dr. Pettry's care.
 
 B. SSDI Application and Medical Evidence
 
 7
 On March 10, 1993, Buzzard applied for Social Security Disability Insurance ("SSDI") benefits, claiming that he was totally and permanently disabled as a result of "an injury to his neck, head, shoulders and jaws" in addition to his "severe depression and ... nervous condition." In an April 22, 1993 letter to the SSA, Dr. Bruce Guberman reported that he had examined Buzzard in connection with his application for SSDI benefits, and that Buzzard was suffering from a number of ailments, including multiple arthralgias, post-traumatic cervical strain, obstructive pulmonary disease, obesity, and tension headaches. Buzzard reported to Dr. Guberman that he had experienced bouts of depression and nervousness since the mine accident. Dr. Guberman, himself, observed that Buzzard appeared "anxious and tense" and that Buzzard had "difficulty in relating to the examiner." Dr. Guberman concluded, however, that based on his examination of Buzzard, "constriction of interests and restriction of activities due to psychiatric problems appears to be unlikely."
 
 
 8
 The SSA thereafter determined that Buzzard was not disabled. Buzzard requested a reconsideration of the SSA's denial and submitted a July 20, 1993 letter from Dr. Pettry stating that, in her opinion, Buzzard was totally disabled as a result of "Coal Workers pneumoconiosis, hearing loss, severe depression with anxiety states, insomnia, recurrent prostatitis and hypertension." In addition, Dr. Pettry stated that between September 1989 and November 1991, "Buzzard suffered from severe depression with suicidal ideation" and that his condition "required heavy sedation to control violent outburst [sic]." The SSA, in turn, referred Buzzard to Dr. Robert Solomon for an evaluation. Dr. Solomon reported to the agency that Buzzard was indeed suffering from an affective disorder, but doubted the impairment was severe. As a result, Dr. Solomon concluded that Dr. Pettry's opinion that Buzzard was totally disabled was not supported by the medical evidence. The SSA subsequently reaffirmed its denial of SSDI benefits to Buzzard.
 
 
 9
 Buzzard was then evaluated by John Atkinson, a licensed clinical psychologist, at the request of his attorney. In a June 11, 1994 report, Atkinson wrote that "[t]he patient reports the onset of depression after his injury in 1987. He states that since then he has been depressed on a constant basis...." Atkinson further observed that:
 
 
 10
 The patient is of quite modest intelligence but actually worked fairly steady [sic] in the mines until he was injured in 1987. He is now lapsed into a severe depressed state, stays in bed all day and is up all night, ... medication has not helped this and the patient actually ought to be seen for ongoing psychiatric help although he has no money to purchase these services.
 
 
 11
 Based upon his evaluation of Buzzard, Atkinson concluded that Buzzard was totally and permanently disabled "due to a combination of intellectual, physical and emotional factors," including severe depression and anxiety disorder.
 
 
 12
 Dr. Elma Bernardo, a psychiatrist, then evaluated Buzzard at the request of the SSA. Buzzard reported to Dr. Bernardo that his shoulders were injured and that he started to become forgetful in 1987 after being involved in the mine accident. Dr. Bernardo noted her impression that Buzzard was suffering from major depressive disorder among other physical and mental health problems. In summarizing her report, Dr. Bernardo wrote that "I see this patient as being affected by multiple medical problems, but I am concerned because although he is depressed, he is not on a therapeutic level of his anti-depressant."
 
 
 13
 Buzzard requested and received a hearing before an administrative law judge ("ALJ") concerning his application for SSDI benefits. On June 21, 1995, the ALJ reversed the SSA's initial decision and awarded Buzzard SSDI benefits. Specifically, the ALJ determined that Buzzard suffered from "severe depressive disorder with anxiety overlay," and that he had been disabled as a result of this condition since June 3, 1987, the date of the mine accident. In reaching this decision, the ALJ reviewed the extensive record of medical evidence in Buzzard's file, including Dr. Pettry's treatment notes and the examination reports prepared by Dr. Guberman, Mr. Atkinson, and Dr. Bernardo. The ALJ also noted that Dr. David Clayman, a licensed psychologist, testified at the benefits hearing that Buzzard's disabling condition "was a direct result of the injuries [he] sustained in the mining accident in June 1987."
 
 C. Application for Disability Pension
 
 14
 On November 8, 1995, Buzzard applied for disability pension benefits from the UMWA 1974 Pension Plan and Trust. The eligibility requirements for a disability pension are set forth in Article II, Part C of the 1974 Pension Plan, which provides in pertinent part that:
 
 
 15
 A Participant who ... becomes totally disabled as a result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits....
 
 
 16
 1974 Pension Plan, Art. II, pt. C (emphasis added). Therefore, to qualify for a disability pension under the 1974 Plan, Buzzard had to establish (1) that he was involved in a mine accident, (2) that he had been awarded SSDI benefits, and (3) that he was disabled "as a result of" a mine accident.
 
 
 17
 In an August 13, 1996 letter, the Trustees denied Buzzard's application on the grounds that the medical records "fail[ed] to support the conclusion that his depression and anxiety resulted from a mining accident." The Trustees subsequently reconsidered the medical evidence and again determined that there was no causal connection between the mine accident and the disabling condition found by the SSA.
 
 
 18
 Buzzard again requested that the Trustees reconsider their denial and submitted in support of his request a March 25, 1997 letter from John Atkinson stating that although Buzzard may have had "some pre-existing emotional difficulties," "his depressive disorder began with his injury and the fact that he can no longer control his life but in fact after [the accident] his body controlled him and his life was at the mercy of others including various agencies, etc." Atkinson further suggested that Buzzard's depression was
 
 
 19
 probably due to the fact that the patient had gotten some of his self-image and ego strength from his employment, his role as provider, he has had a stable marriage and on the job he worked for seventeen years having left his job in June, 1987 because of his injuries. It is noted that prior to the injury, the patient did have some psychological problems with his Chronic Anger State Disorder but it is noted that he had never left any job because of any kind of emotional or behavioral factors as of the time of his injury.
 
 
 20
 On July 10, 1997, the Trustees denied Buzzard's application for a disability pension, again finding that there was no causal nexus between the mine accident and the disabling condition for which Buzzard was awarded SSDI benefits. By letter dated July 9, 1998, the Trustees refused any further consideration of Buzzard's application, stating that he had failed "to establish that a causal relationship exists between the mining accident of June 3, 1987 and the total disability."
 
 
 21
 On February 23, 2001, Buzzard filed suit against the Trustees alleging that they had unlawfully denied his application for disability pension benefits. On March 28, 2003, the district court entered summary judgment in favor of the Trustees, finding that substantial evidence supported the denial of a disability pension in this case. This appeal followed.
 
 II.
 
 22
 We generally review the district court's order granting summary judgment de novo. Brogan v. Holland, 105 F.3d 158, 161 (4th Cir.1997). However, in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Bruch, 489 U.S. at 115, 109 S.Ct. 948 (emphasis added). If the plan confers such authority upon the plan administrator, a deferential abuse of discretion standard applies to appellate review of the eligibility determination. Id. Because we have previously held that the 1974 Plan vests the Trustees with "full and final" authority to determine who is eligible for benefits, our review is limited to ascertaining whether the Trustees abused their discretion. Boyd v. Trs. of the UMW Health & Ret. Funds, 873 F.2d 57, 59 (4th Cir.1989). The Trustees' denial of a disability pension is not an abuse of discretion if that decision is supported by substantial evidence. Brogan, 105 F.3d 158. It is against this factual and legal backdrop that we evaluate the merits of Buzzard's appeal.[3]
 
 
 23
 Buzzard contends that the Trustees denied his application for disability pension benefits even though he satisfied all of the eligibility criteria specified in the 1974 Pension Plan. If established, this would, of course, constitute an abuse of discretion. See LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 207 (1984) ("A trustee has the obligation to guard the assets of the trust from improper claims, as well as the obligation to pay legitimate claims.").
 
 
 24
 In this case, there is no dispute that Buzzard has met the first two requirements of establishing eligibility for benefits under the Plan: Buzzard was involved in a mining accident, and he was awarded disability insurance benefits by the SSA. The sole issue in dispute is whether Buzzard was disabled "as a result of" a mining accident. The Trustees denied Buzzard's application for a disability pension on the grounds that he failed to establish this requirement. We agree with Buzzard, however, that the Trustees' decision is not supported by substantial evidence.
 
 
 25
 An applicant establishes total disability as a result of a mine accident by showing that the accident was the proximate cause of the disability. See Robertson v. Connors, 848 F.2d 472, 475 (4th Cir.1988). An applicant can establish proximate cause in either of two ways: 1) by showing a direct relationship between the mine accident and the disability found by the SSA, see Chicarelli v. UMWA Health & Ret. Funds, 943 F.2d 457, 458 (4th Cir.1991) (discussing the "direct or single approach method" of establishing proximate cause); or 2) by proving that the mine injury combined with a pre-existing or subsequent impairment to result in total disability. See id. at 458-59 (discussing the "combination approach" to establishing causation). We explained in Robertson that
 
 
 26
 if the plaintiff was injured in a mine accident and that injury, whether in combination with a previous or subsequent condition, is substantially responsible for plaintiff's inability to perform his job and for whatever medical or vocational reasons he is unable to perform an alternative job, then his total disability results from a mine accident.
 
 
 27
 Robertson, 848 F.2d at 475.
 
 
 28
 Buzzard points to the following evidence in support of his claim that the 1987 mine accident proximately caused his total disability. First, in August 1987, a mere two months after the mine accident, Dr. Schmidt examined Buzzard and observed that he appeared "somewhat depressed." Apparently, Buzzard's condition was serious enough for Dr. Schmidt to recommend that Buzzard begin a course of Elavil, an anti-depressant medication. In addition, Dr. Pettry treated Buzzard for anxiety as early as August of 1989. Together, this evidence reveals the proximity between the date of the mine accident and Buzzard's treatment for depression and anxiety. Second, Mr. Atkinson examined Buzzard and concluded that his depressive disorder began with the mine accident. Third, Dr. Clayman testified at the SSA benefits hearing that, based upon his review of Buzzard's medical history, Buzzard's disabling impairment was a direct result of the injuries he suffered in the mine accident.
 
 
 29
 Fourth, and most important, the SSA administrative law judge concluded that Buzzard became disabled on the date of the mine accident. We have previously held that the disability onset date as found by the ALJ is "entitled to great weight" in determining whether the disability in question was proximately caused by a mining accident. Richards v. UMWA Health & Ret. Fund, 895 F.2d 133, 138 (4th Cir.1990). This date is significant to our analysis as it reflects that the ALJ, having reviewed all of the medical evidence on the question of disability, believed that a causal relationship exists between the mine accident and the applicant's total disability. Although the disability onset date is not dispositive, Richards, 895 F.2d at 138, in cases where the ALJ has found that the disability commenced on or near the date of the accident, we have characterized the disability onset date as the "critical factor" in determining whether the mine accident caused the applicant's disability. Robertson, 848 F.2d at 476 n. 5; Horn v. Mullins, 650 F.2d 35, 37 (4th Cir.1981).
 
 
 30
 For their part, the Trustees denied Buzzard a disability pension based on the following arguments and evidence. First, they contend that Buzzard was unable to return to work because he had lost his job in the mines, not as a result of any psychological impairment caused by the mine accident. In a July 10, 1997 letter to Buzzard, the Trustees stated that:
 
 
 31
 Regarding the temporal relationship between the June 3, 1987 mining accident and the date of onset of Social Security disability, Mr. Buzzard claimed he was unable to work as of the date of injury. However, the records show that he had been released to return to work and had informed Dr. Schmidt that he wanted to return to work. Meanwhile, the mine had closed; Mr. Buzzard was laid off and had no job to return to. Additionally, he reported to Dr. Silk on November 16, 1987 that he wanted to work in the future. There is no indication that he was unable to work due to any effects of the injury.
 
 
 32
 J.A. at 59-60.
 
 
 33
 This argument fails. For one thing, the Trustees imply that Buzzard could have returned to his former occupation if he had not already been laid off. We stated in Boyd, however, that "`a Social Security disability award conclusively establishes the medical disability of the pension applicant.'" Boyd, 873 F.2d at 59 (quoting Robertson, 848 F.2d at 475). The SSA indeed found that Buzzard was "disabled" within the meaning of the Social Security Act. Stated differently, the agency found that Buzzard was "unable `to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months.'" Craig v. Chater, 76 F.3d 585, 592 (4th Cir.1996) (quoting 42 U.S.C. §§ 1382c(a)(3)(A) & 423(d)(1)(A)(second alteration in original)). Thus, the SSDI award establishes that Buzzard's "severe depression with anxiety overlay," and not the loss of his job, rendered him unable to work.[4] See Boyd 873 F.2d at 59.
 
 
 34
 To the extent the argument suggests that the release to work is evidence that any mental impairment caused by the mine accident was "resolved" by October 1987, and that some other factor must have caused Buzzard's disabling depression, this, too, is resolved by Robertson and Boyd. The Trustees point to factors stemming from Buzzard's difficult childhood as well as the financial struggles and loss of self-image Buzzard experienced after losing his job. In both Robertson and Boyd, however, we held that plan administrators must not limit their evaluation of a pension claim to the narrow question of whether a mine accident, by itself, caused the applicant's disability. Boyd, 873 F.2d at 60; Robertson, 848 F.2d at 475-76. Those cases make clear that a mine accident is also the proximate cause of an applicant's disability where the disabling condition found by the SSA is based upon the effect of a mine injury working in combination with a pre- or post-accident condition. Boyd, 873 F.2d at 60; Robertson, 848 F.2d at 475-76. Contrary to our holdings in Robertson and Boyd, the Trustees failed to consider evidence in John Atkinson's report that the injuries Buzzard sustained in the mine accident exacerbated emotional instability that pre-dated the accident.[5] Similarly, the Trustees did not consider evidence in Atkinson's report that Buzzard's mine injuries, his inability to work, and the resulting loss of "his self-image and ego strength," worked in combination to produce the disabling condition found by the SSA.
 
 
 35
 Second, the Trustees denied Buzzard a disability pension on the grounds that only one of the physicians or medical experts that examined him personally concluded that the mine accident caused his depression and anxiety. The Trustees point to the fact that Dr. Schmidt, Dr. Silk, Dr. Pettry, Dr. Guberman, and Dr. Bernardo each examined Buzzard, but did not conclude that the mine accident caused his psychological impairment. However, the experts the Trustees point to were asked to opine on the existence of a disability, not the issue of causation. With the exception of Dr. Pettry, each expert examined Buzzard for the sole purpose of determining whether he satisfied the SSA's eligibility criteria for the payment of SSDI benefits. As a result, the opinions expressed by these experts were relevant only to the question of Buzzard's disability, and that question has been settled by the SSA's determination that Buzzard is totally and permanently disabled. Significantly, the only medical evidence of record as to causation supports Buzzard's position that the mine accident proximately caused his disability.[6] Both Dr. Clayman and Mr. Atkinson concluded that Buzzard's disabling condition was directly related to the injuries he sustained in the mine accident.
 
 
 36
 The Trustees refused to credit Dr. Clayman's testimony on the grounds that he did not examine Buzzard and because his opinion that the mine accident caused Buzzard's disability is "not based on objective medical evidence." We are aware of no authority, and the Trustees cite none, that it is inappropriate for a licensed psychologist to render an expert opinion based upon an examination of the patient's medical records. In addition, Dr. Clayman's conclusion regarding the cause of Buzzard's disability is indeed based on "objective" evidence, most notably Dr. Schmidt's diagnosis of depression a mere two months after the mine accident.
 
 
 37
 Finally, the Trustees argue that John Atkinson's opinion, as expressed in his 1997 letter, that the mine accident caused Buzzard's disability should be disregarded because (1) Atkinson did not draw any such conclusion in his 1994 letter, (2) Atkinson examined Buzzard only once and seven years after the accident, and (3) Atkinson should have attributed Buzzard's inability to work not to his psychological impairment, but instead to the fact that he had lost his job. We find these arguments unpersuasive. First, Atkinson did, in fact, suggest in his 1994 letter that the mine accident was causally linked to Buzzard's depressive condition. In his 1994 letter, Atkinson observed that Buzzard "worked fairly steady in the mines until he was injured in 1987. He is now lapsed into a severe depressed state...." J.A. at 147 (emphasis added). When Atkinson was specifically asked in 1997 to opine on what caused Buzzard's disability, he relied on this statement regarding causation from his 1994 letter. With regard to the Trustees' second argument, we are aware of no authority, and, again, the Trustees cite none, that would prevent a claimant from relying on the opinion of a trained medical expert that is based upon a review of the medical records and the claimant's oral history. The Trustees were free to introduce evidence to the contrary, but chose not to. Third, as we have noted above, Buzzard's award of SSDI benefits conclusively establishes that his depressive condition, and not the loss of his job, was responsible for his inability to work.
 
 III.
 
 38
 Although we are mindful of the limited and deferential nature of our review, having evaluated the medical evidence and arguments presented in this appeal, we are nonetheless constrained to hold that substantial evidence does not support the Trustees' decision to deny Buzzard a disability pension. The Trustees' denial of pension benefits was, therefore, an abuse of discretion. Accordingly, we reverse the order of the district court granting summary judgment in favor of the Trustees and remand with instructions that the district court enter judgment in favor of Buzzard.
 
 
 REVERSED AND REMANDED
 
 
 
 Notes:
 
 
 [1]
 Dr. Adnan Silk performed a neurosurgical evaluation of Buzzard the following month and likewise noted that although Buzzard had been out of work since September of 1987, he was "willing to go back to work in the future."
 
 
 [2]
 Xanax may also be used for the treatment of depression. J.A. at 108
 
 
 [3]
 Buzzard also contends that he is entitled to conduct discovery to learn, in addition to the specific reasons why he was denied benefits, the analytical process behind the Trustees' benefits decision. Buzzard claims that he is entitled to statutory damages under ERISA for the Trustees' alleged refusal to provide this information. However, Buzzard does not contest the district court's determination that relitigation of these claims is barred by res judicata. J.A. at 30-33. Accordingly, we conclude that the claims have been abandoned on appeal
 
 
 [4]
 The dissent, much like the Trustees, cites the release to work as evidence that Buzzard was not disabled, and that he could have returned to his job had he not already been laid off. See post at 273-74. We do not sit, however, to question the existence of Buzzard's medical disability. The fact that Buzzard was awarded SSDI benefits "conclusively establishes" that he was unable to work as a result of his disability, not because he had been laid offBoyd, 873 F.2d at 59.
 
 
 [5]
 We note that Buzzard never left his job due to the emotional problems stemming from his troubled childhood. We are thus unpersuaded that these problemsalone caused his severe depression and anxiety disorder; and neither the Trustees nor the dissent have considered their effect in combination with the mine accident, as Boyd requires.
 
 
 [6]
 Like the Trustees, the dissent suggests that the failure of certain medical experts to express an opinion concerning the cause of Buzzard's disability is evidence that the 1987 mine accident did not proximately cause his disabilitySee post at 274. The dissent misses the point that the evidence provided (or not provided) by these experts, in the course of the SSA's efforts to determine the existence of Buzzard's disability, is simply not relevant to the question of whether the disability ultimately found by the SSA was proximately caused by a mine accident. At bottom, Buzzard has offered the only relevant evidence on the issue of causation, and that evidence supports his claim the the mine accident was the proximate cause of his disabling condition.
 It is correct, as the dissent notes, that Buzzard's primary care physician "gave no indication that any treatment she prescribed for Buzzard's insomnia and anxiety was required as a result of his mine injury." Post at 274. However, there is no indication in the record that Dr. Pettry was ever asked to opine on the issue of causation. In stark contrast to the negative inference the dissent draws from the absence of an opinion from Dr. Pettry concerning the cause of Buzzard's disability is the fact that Buzzard offered the only evidence directed to the issue of causation. As noted above, the Trustees proffered none.
 
 
 NIEMEYER, Circuit Judge, dissenting:
 
 39
 In denying Hobert L. Buzzard disability benefits under the United Mine Workers of America 1974 Pension Plan and Trust (the "Plan"), the Trustees of the Plan found that Buzzard did not adequately establish a causal link between his 1987 mine accident, in which he hit his head on an airlock, and his total disability from a severe depressive disorder, recognized in 1995 by the Social Security Administration. The district court affirmed the Trustees' decision, concluding that the Trustees had conducted a "principled reasoning process" and arrived at their decision to deny benefits based upon "substantial evidence." Accordingly, the district court found that the Trustees did not abuse their discretion in denying Buzzard benefits under the Plan. I would affirm.
 
 
 40
 Because the Trustees were given discretionary authority to review disability applications and make awards, we review their decision for abuse of discretion. See Brogan v. Holland, 105 F.3d 158, 161 (4th Cir.1997); see also Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Thus, we will not disturb the Trustees' decision so long as it "is the result of deliberate, principled reasoning process and ... is supported by substantial evidence." Brogan, 105 F.3d at 161 (internal quotation marks and citations omitted).
 
 The relevant language of the Plan reads:
 
 41
 A Participant who ... becomes totally disabled as a result of a mine accident ... shall, upon retirement ... be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such accident such Participant is subsequently determined to be eligible for Social Security Disability Insurance Benefits....
 
 
 42
 Construing this language, we have concluded that while an award of Social Security Disability Insurance benefits conclusively establishes medical disability status, it does not conclusively establish a causal link between the disability and the mine accident. Hale v. Trustees of UMW Health & Ret. Funds, 23 F.3d 899, 902 (4th Cir.1994). The causal-link determination is entrusted to the discretion of the Trustees. Boyd v. Trustees of UMW Health & Ret. Funds, 873 F.2d 57, 59 (4th Cir.1989). In making this determination, the Trustees must take the causal-link language — "as a result of a mine accident" — to mean that the total disability must be proximately caused by the accident, whether directly or in combination with a preexisting or subsequent condition. Id.
 
 
 43
 In this case, the Trustees concluded that Buzzard did not adequately prove that his disability for severe depressive disorder was caused by his 1987 head injury. In reviewing this determination, we are not free to substitute our judgment on causation for that of the Trustees; rather we must determine only whether the determination was made through a reasoned process and was supported by substantial evidence.
 
 
 44
 There is no real dispute that the Trustees' decision in this case was the result of a deliberate and principled reasoning process. They carefully reviewed all of the evidence and analyzed it in a 13-page letter that contains an assessment of all the operative facts, summarizes Buzzard's efforts to receive treatment, and examines the conclusions reached by each of the various physicians involved.
 
 
 45
 On the central issue presented in this appeal — whether the Trustees' determination that Buzzard did not adequately prove a causal link between his 1987 mine injury and his disability from depression — the record shows that the Trustees' determination was supported by substantial evidence. The Trustees articulated the evidence upon which they relied, and the district court spelled this evidence out in its decision. First, Buzzard was released to work on October 16, 1987, after recovering from his accident, and he failed to return to work then only because he had been laid off as of September 1987 when the mine closed, not because of his June 1987 injury. Second, Dr. Karen Pettry, Buzzard's primary care physician through 1995, gave no indication that any treatment she prescribed for Buzzard's insomnia and anxiety was required as a result of his mine injury. She attributed these conditions to "[m]uch stress in [the] family." Third, Dr. Pettry's letters of July 1993 and February 1994 supported Buzzard's claim for Social Security disability benefits based on his mental condition but did not link Buzzard's disability with his mine accident. Fourth, two physicians, Dr. Robert Solomon and Dr. M.G. Lembrecht, actually concluded that Buzzard was not totally disabled. Fifth, three other physicians, Dr. John Schmidt, Dr. Adnan Silk, and Dr. Bruce Guberman and one psychiatrist, Dr. Elma Bernardo, analyzed Buzzard's various mental and physical ailments over the years but never linked these ailments to the 1987 mine accident. Moreover, a clinical psychologist, John Atkinson, also did not link Buzzard's disability to the mine accident in his 1994 report; he only did so three years later, in 1997. The Trustees did not give Atkinson's reversal much weight because he failed to explain how he had arrived at this new conclusion. In the Trustees' view, Atkinson's conclusion was properly discounted because he relied only on Buzzard's later statements and Dr. Pettry's inconclusive records and therefore his conclusion in 1997 was "not supported and verified by objective evidence." At bottom, the Trustees noted that Buzzard was fit to return to work in late 1987 and that only intervening events — the mine closure and his layoff — prevented his return. The mental conditions leading to Buzzard's disability were not causally linked to his mine accident for several years, and only then retroactively to buttress his Social Security claim.
 
 
 46
 While one might comb the record, as the majority does, to find some evidence to support a possible causal link, it is not our function to resolve factual differences in this way. Rather, we are limited to determining only whether the Trustees had substantial evidence to support the decision they reached. See Brogan, 105 F.3d at 161. Under this standard of review, we do not enjoy the luxury of second guessing the Trustees or coming to a different conclusion based on our own evaluation of the evidence. I believe that, based on this deferential standard of review, we can only conclude that the Trustees' decision was supported by substantial evidence. Accordingly, I would affirm the judgment of the district court on the reasoning it gave.